**Judge Ann O'Malley SHAKE, Jefferson Circuit Court, Movant,**

v.

**The ETHICS COMMITTEE OF THE KENTUCKY JUDICIARY, Respondent.**

**No. 2002–SC–0247–OA.**

Supreme Court of Kentucky.

Dec. 18, 2003.

Ann O'Malley Shake, Judge, Jefferson Circuit Court, Hall of Justice, Louisville, for Movant.

Jean Collier, Ethics Committee of the Kentucky Judiciary, Frankfort, Judge James Bowling, Ethics Committee of the Kentucky Judiciary, Pineville, Counsel for Respondent.

KELLER, Justice.

## I. INTRODUCTION

Pursuant to SCR 4.310(4),[1] Movant, Ann O'Malley Shake, Judge of the Jefferson Circuit Court, Thirtieth Judicial Circuit, Sixteenth Division, seeks this Court's review of two judicial ethics opinions issued by the Ethics Committee of the Kentucky Judiciary ("Ethics Committee").[2] In Judi-

---

1. SCR 4.310(4) provides:

Any person affected by a formal opinion of the ethics committee may obtain a review thereof by the Supreme Court by filing with the clerk of that court within 30 days after the end of the month in which it was published a motion for review stating the grounds upon which the movant is dissatisfied with the opinion. The motion shall be accompanied by a copy of the opinion or a synopsis as published and shall be served upon the ethics committee and, if the movant is someone other than the party who initiated the request for the opinion, upon the initiating justice, judge or commissioner. The filing fee for docketing such motion shall be as provided by Civil Rule 76.42(1) for original actions in the Supreme Court.

2. SCR 4.310(2) reads:

Opinions as to the propriety of any act or conduct and the construction or application of any canon shall be provided by the committee upon request from any justice, judge or trial commissioner. If the committee finds the question of limited significance, it shall provide an informal opinion to the questioner. If, however, it finds the question of sufficient general interest and importance, it shall render a formal opinion, in which event it shall cause the opinion to be published in complete or synopsis form. Likewise, the committee may issue formal opinions on its own motion under such circumstances as it finds appropriate.

cial Ethics Opinion JE–98 ("JE–98"), the Ethics Committee advised Movant that a judge or judicial candidate may not make a contribution in order to attend a political fundraiser. In Judicial Ethics Opinion JE–100 ("JE–100"), Movant was advised that a judge could not sit on the board of a local mediation organization.

We agree with JE–98 and adopt that opinion; however, we disagree with and vacate JE–100.

## II. BACKGROUND

Judicial Ethics Opinion JE–98 was in response to Movant's question of whether "a judge or judicial candidate [may] attend a fundraiser for another candidate and make the contribution suggested by the candidate?" The Ethics Committee answered that "[a] judge or judicial candidate may attend any political gathering to campaign in his or her own behalf, but the judge or judicial candidate may not make a contribution to another campaign." In its opinion, the Ethics Committee relied on Judicial Canon 5A(1)(c) in support of its position:

> The question presented was whether a judge or judicial candidate may attend a fundraiser for another candidate and make the contribution suggested by the candidate. Any judge or judicial candidate may attend any political gathering to campaign in his or her own behalf. Canon 5A(2). If necessary, he or she may purchase tickets to attend the event. Canon 5A(2). However, political contributions are prohibited. Canon 5A(1)(c).

> It was suggested to the Committee that where a contribution was required to attend the event, the contribution was the same as a ticket. Traditionally, the Committee has interpreted a "ticket" to be some nominal fee such as the price of two drinks or the cost of the meal. The

candidate may attend the fundraiser and pay for the cost of the food and drink that he or she consumes, but any amount above this cost is, under the Judicial Ethics Code, a contribution to the candidate and therefore prohibited. This interpretation of the Code is supported by the invitations in question for this opinion which requested "contributions" of $25, $50, or $100 or $250–$500, by the definition of "contribution" contained in KRS 121.015(6), and by KRS 121.180(3)(a) which requires contributions at fundraisers which collect in excess of $3000 to be reported. Contributions in excess of $100 must be reported individually.

Movant requests that JE–98 be amended to allow judicial candidates to pay a reasonable minimum contribution in order to attend political fundraisers and events.

JE–100 was in response to Movant's question: "May a sitting judge hold a position as Board Member with a local Mediation Company?" The Ethics Committee's answer was an unqualified "No," because of its perception of the appearance of impropriety:

> The Judicial Ethics Committee unanimously agrees that it violates the appearance of impropriety for a sitting judge to hold a position as Board member with a local Mediation Company. Regardless of whether the public will then perceive the judge to be acting as a mediator, litigants will likely believe that they will incur the judge's disfavor if they refuse to mediate their case. In addition, litigants may also believe that they will displease the judge if they choose an alternative mediation company whether the judge refers litigants to his company or not.

Movant requests that we vacate JE–100 and determine that members of the judiciary are permitted to serve as members

of the boards of directors of non-profit mediation groups.

## III.  ANALYSIS

### A.  Judicial Ethics Opinion JE–98.

In formulating its answer to Movant's question, the Ethics Committee relied upon Judicial Canon 5A(1)(c), and it reads as follows:

A.  Political Conduct in General.

(1) A judge or a candidate for election to judicial office shall not:

. . . .

(c) solicit funds for or pay an assessment or *make a contribution to a political organization or candidate,* except as authorized in subsection A(2)[.] [3]

Subsection A(2) provides that "[a] judge or a candidate for election to judicial office may purchase *tickets* to political gatherings for the judge or candidate and one guest[.]" [4]

Movant asserts that the terms "ticket" and "contribution" are interchangeable. She argues that "if a contribution is the cost of entry into the fundraising event, then the contribution is actually a ticket entry price." Movant suggests that it is unrealistic to assume that the proceeds from tickets to fundraising events are not used to fund a political candidate's campaign and contends that because of this "reality," such ticket sales are in essence the same as contributions. Additionally, Movant argues, "[i]t is an exercise in semantics to allow one voluntary payment (ticket) to gain admittance to political fundraisers, yet prohibit another (a contribution) simply because of terminology."

We disagree; it is a distinction with a difference.

■   Under Canon 5 of Kentucky's Code of Judicial Conduct, the terms "ticket" and "contribution" are not, as suggested by Movant, interchangeable.  The Ethics Committee states that it has traditionally "interpreted a 'ticket' to be some nominal fee such as the price of two drinks or the cost of the meal[,]" and that "[t]he candidate may attend the fundraiser and pay for the cost of the food and drink he or she consumes, but any amount above this is, under the Judicial Ethics Code, a contribution to the candidate and therefore prohibited."  We agree with this interpretation. It allows subsections 5A(1)(c) and 5A(2) to be construed together and effect given to each subsection.

As correctly pointed out by the Ethics Committee's response, the Code of Judicial Ethics deals not only with subjective intent, but also with appearances.[5]  Thus, "[a] judge or candidate, in purchasing tickets to political gatherings, should be careful that he or she doesn't create the impression that the purchase is not for the advancement of the judge or candidate but is solely a contribution to another candidate or political organization, which is prohibited." [6]  Accordingly, if a judge or judicial candidate purchases a ticket for a price substantially in excess of the cost of the food and beverages served at the fundraising event, then the judge or judicial candidate not only creates an impression that he or she is making a contribution to another candidate or political organization,

---

**3.**  SCR 4.300, Kentucky Code of Judicial Conduct, Canon 5A(1)(c) (emphasis added).

**4.**  SCR 4.300, Kentucky Code of Judicial Conduct, Canon 5A(2)(emphasis added); *accord* Judicial Ethics Opinion JE–93.

**5.**  *See* SCR 4.300, Kentucky Code of Judicial Conduct, Canon 2.

**6.**  SCR 4.300, Kentucky Code of Judicial Conduct, Canon 5A(2), commentary.

but in fact does so, and therefore, the contribution is prohibited.

Certainly, we are sympathetic to judicial candidates and the difficulties and frustrations that they must confront in attempting to conduct a campaign that is in accordance with both the letter and spirit of Kentucky's Code of Judicial Conduct. The American Bar Association's Model Code of Judicial Conduct, after which Kentucky's Code is modeled, avoids many of the problems presented by political gatherings where a contribution is requested from those attending. It specifically allows judges and judicial candidates subject to public election to purchase tickets for and attend political gatherings for other candidates and to make contributions to political organizations.[7] Thus, in the context of Canon 5C(1)(a) of the ABA's Model Code, one might well construe the terms "ticket" and "contribution" as interchangeable. However, Kentucky's Code, while allowing judicial candidates to attend events that will enable them to meet supporters and voters and to purchase tickets to such events, explicitly prohibits judges and judicial candidates from making contributions to political campaigns or organizations. So, to suggest that the purchase of a ticket—the price of which represents only the cost of the food and beverages served at the event—in contrast to a contribution to a political campaign or organization is a distinction without a difference is to dismiss the consideration given by the drafters of Kentucky's Code in the decision to depart from the ABA's Model Code section on political conduct. Accordingly, we adopt the opinion of the Ethics Committee.

Movant's question of whether the contribution should be made out of the personal funds of the candidate or the candidate's campaign funds is rendered moot by this decision.

## B. Judicial Ethics Opinion JE–100.

Under Canon 4C(3), a judge is permitted to serve as a director of an organization devoted to the improvement of the law, the legal system, or the administration of justice:

A judge may serve as an officer, director, trustee or non-legal advisor of an organization or governmental agency devoted to the improvement of the law, the legal system or the administration of justice or of an educational, religious, charitable, fraternal or civic organization not conducted for profit, subject to the following limitations and the other requirements of this Code.

(a) A judge shall not serve as an officer, director, trustee or non-legal advisor if it is likely that the organization

(i) will be engaged in proceedings that would ordinarily come before the judge, or

(ii) will be engaged frequently in adversary proceedings in the court of which the judge is a member or in any court subject to the appellate jurisdiction of the court of which the judge is a member.

(iii) by reason of its purpose, will have a substantial interest in other proceedings in the Court in which the judge is a member or in any court subject to the appellate jurisdiction of the court of which the judge is a member.[8]

---

7. American Bar Association Model Code of Judicial Conduct, Canon 5C:

(1) A judge or a candidate subject to public election may, except as prohibited by law:
(a) at any time

(i) purchase tickets for and attend political gatherings;
(ii) identify himself or herself as a member of a political party; and
(iii) contribute to a political organization[.]

8. SCR 4.300, Kentucky Code of Judicial Con-

And, Canon 2B allows a judge to lend the prestige of the judge's office to advance the public interest in the administration of justice.[9]

Citing both Canons 4C(3) and 2B in support of her petition for review, Movant seeks to continue her service as a director of Just Solutions,[10] a tax-exempt, non-profit organization, that, in addition to providing mediation services on a sliding scale, provides *pro bono* mediation services to the indigent in Jefferson County. Just Solutions also provides basic mediation training and Family Court mediation training to those members of the community interested in serving as mediators. Movant asserts that Just Solutions promotes the interests of the bench and bar, the legal system, and the administration of justice in the Commonwealth. She points out that Just Solutions is not likely to appear before the Jefferson Circuit Court as a litigant, that it has no substantial interest in other circuit court proceedings, and that Just Solutions seeks to assist those who cannot afford the costs of litigation. Movant states that "[i]t is not improper [for a judge] to encourage and support mediation services for all citizens of this Commonwealth."

▮ The Ethics Committee does not dispute Movant's claim that Just Solutions falls within the ambit of Canon 4C(3) as an organization that is "devoted to the improvement of the law, the legal system [and] the administration of justice," and it

does not take issue with Movant's assertion that her service on Just Solutions's board advances "the public interest in the administration of justice." But the Ethics Committee asserts that a judge sitting on Just Solutions's board "violates the appearance of impropriety." We disagree.

Kentucky's Code of Judicial Conduct directs a judge to avoid "the appearance of impropriety in all of the judge's activities."[11] "The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired."[12] Therefore, the issue before this Court is whether Movant's position as a member of the Board of Directors of Just Solutions creates such a perception. If so, then the Ethics Committee was correct when it advised in JE–100 that service by a sitting judge on the board of a mediation organization is prohibited by the Code of Judicial Conduct. Unlike the Ethics Committee, however, we do not believe that Movant's position on Just Solutions's board results in the appearance of impropriety.

In its response to Movant's motion for review, the Ethics Committee expands somewhat upon the reasons set forth in its opinion for advising Movant that the conduct at issue violated the appearance of impropriety standard. First, the Ethics Committee noted that Canon 4F prohibits sitting judges from acting as mediators,[13]

---

duct, Canon 4C.

**9.** SCR 4.300, Kentucky Code of Judicial Conduct, Canon 4B ("A judge may properly lend the prestige of the judge's office to advance the public interest in the administration of justice.").

**10.** Movant has served as a director of Just Solutions for over ten (10) years, but she immediately took inactive status when she

received notice of JE–100. Just Solutions's directors serve without compensation.

**11.** SCR 4.300, Kentucky Code of Judicial Conduct, Canon 2 ("A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.").

**12.** *Id.* at commentary.

**13.** SCR 4.300, Kentucky Code of Judicial Conduct, Canon 4F ("A judge shall not act as

and therefore "it is confusing to the general public to prohibit judges from acting as mediators and yet at the same time to permit them to serve as board members of a mediation company." Second, it contends that litigants may believe that the judge has a vested interest in the option of mediation and thus litigants may feel compelled to choose mediation when it is available. Finally, the Ethics Committee was concerned that litigants who choose mediation may feel pressured to choose the judge's mediation company as opposed to other mediation companies available for fear of displeasing the judge. We find none of these reasons supportive of the Ethics Committee's opinion that a judge's service on a mediation organization's board creates an appearance of impropriety.

Although Canon 4F prohibits a sitting judge from serving as a private mediator, we disagree with the Ethics Committee's suggestion that Canon 4F's mediation-prohibition, therefore, creates an appearance of impropriety when the judge sits on the board of directors of a mediation organization. The Ethics Committee contends that "it is confusing to the general public to prohibit judges from acting as mediators and yet at the same time to permit them to serve as board members of a mediation company." We disagree. By way of anal-

ogy, we would point out that although a judge is specifically prohibited from practicing law,[14] the commentary to Canon 4C(3) recognizes the appropriateness of a judge serving on the board of a legal aid organization unless such organization makes a policy decision that may have political significance or imply commitment to causes that may come before the courts.[15] We would note that neither public confusion nor the appearance of impropriety has resulted from a judge's service on the board of such an organization. To the contrary, judicial involvement with such non-profit entities has had the effect of properly lending prestige and credibility to the organizations as well as offering the judge an opportunity to provide a service to the community and thereby advancing the public's regard of the judiciary. We believe that allowing Movant to serve on the Board of Directors of Just Solutions would have a similar impact.

We find no valid basis for the Ethics Committee's fear that litigants may feel compelled to choose mediation if the judge sits on a mediation organization's board. Under Kentucky's Model Mediation Rules,[16] which were developed under the direction of this Court, a judge may refer a case to mediation regardless of whether the parties desire mediation.[17] Although

---

an arbitrator or mediator or otherwise perform judicial functions in a private capacity unless expressly authorized by law."). This provision, however, "does not prohibit a judge from participating in arbitration, mediation or settlement conferences performed as part of judicial duties." *Id.* at commentary.

**14.** SCR 4.300, Kentucky Code of Judicial Conduct, Canon 4G ("A judge shall not practice law.").

**15.** SCR 4.300, Kentucky Code of Judicial Conduct, Canon 4C(3) commentary ("The changing nature of some organizations and of their relationship to the law makes it necessary for a judge regularly to reexamine the

activities of each organization with which the judge is affiliated to determine if it is proper for the judge to continue the affiliation. For example, in many jurisdictions charitable hospitals are now more frequently in court than in the past. Similarly, the boards of some legal aid organizations now make policy decisions that may have political significance or imply commitment to causes that may come before the courts for adjudication.").

**16.** SCR Model Mediation Rules.

**17.** SCR, Med Rule 3, Referral of cases to mediation:

At any time on its own motion or on motion of any party, the Court may refer a

the decision to choose mediation is frequently made by the litigants, the fact that the judge sits on a mediation organization's board is an insignificant factor in the making of that decision by litigants when compared to the litigants' knowledge that the judge has the absolute discretion to order mediation even if they choose otherwise.[18] In other words, litigants may feel pressured to choose mediation because the judge is a known proponent of mediation and likely to order it regardless of their desires, but not because the judge sits on a mediation organization's board. Regardless, we find nothing wrong with a judge advocating mediation to litigants that come before the court.

Finally, we disagree with the Ethics Committee's position that litigants who decide on mediation may feel pressured to choose the mediation organization associated with the judge as opposed to other mediation organizations for fear of displeasing the judge. Quite simply, we believe that a judge's non-compensated position on a mediation board cannot reasonably be perceived as coercive in a litigant's selection of a mediation service. To hold otherwise would eviscerate Canon 4C(3) because under the Ethics Committee's reasoning, a judge would be prohibited from serving on any organization if there was a competing organization in the judge's community. While the judge's association with a particular mediation service may be a factor considered by litigants in some situations, its

significance does not rise to the level of coerciveness. A judge may not, however, engage in mediation for the mediation service or directly refer litigants to the mediation service on which the judge serves on the board if the mediation organization is to receive compensation for its services from the litigants.

For the above reasons, we agree with Movant that a judge's service on a non-profit mediation organization's board does not create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired; therefore, such service is permitted under Canon 4C(3).

### IV. CONCLUSION

For the foregoing reasons, Judicial Ethics Opinions JE–98 issued by the Ethics Committee of the Kentucky Judiciary is hereby adopted and Judicial Ethics Opinions JE–100 is hereby vacated.

LAMBERT, C.J.; GRAVES and STUMBO, JJ., concur.

COOPER, JOHNSTONE and WINTERSHEIMER, JJ., dissent as to JE–100, which they would adopt for the reasons expressed in the Ethics Committee's opinion.

case or portion of a case for mediation. In this decision, the court shall consider:
 (a) the stage of the litigation, including the need for discovery, and the extent to which it has been conducted;
 (b) the nature of the issues to be resolved;
 (c) the value to the parties of confidentiality, rapid resolution, or the promotion or maintenance of on-going relationships;
 (d) the willingness of the parties to mutually resolve their dispute;

 (e) other attempts at dispute resolution; and
 (f) the ability of the parties to participate in the mediation process.

18. *See also* CR 16(1) ("In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider: ... (f) Such other matters as may aid in the disposition of the action.").